Thank you. Good afternoon, Your Honors, Counsel, and may it please the Court. My name is Emily Koza and I'm from the Office of the State Appellate Defender representing Mr. Cameron Taylor in this appeal. During the lunch break on the second to last day of Mr. Taylor's trial, the head of courthouse security informed the judge that a juror, Juror P.A., had told him that she had been followed from the courthouse during her break. And it's this incident which is the focus of this appeal. The issue here is straightforward. Whether the trial court denied Mr. Taylor a fair trial by an impartial jury when it failed to dismiss Juror P.A. and replace her with alternate juror M.T. who had no knowledge of the incident. Juror P.A. stated that she absolutely associated being followed with her participation in the trial. And that's what matters here. This was an easy fix. The judge could have dismissed Juror P.A. and put in a juror who didn't believe that they had been followed due to their association with the trial. Moreover, Juror P.A. clearly believed that she was in danger. So regardless of her telling the judge that she wasn't scared, her actions demonstrated otherwise. P.A. interpreted what could have been a coincidence, a car traveling behind her in the same direction, to be a threat to her safety. She attempted to take down the car's license plate. She felt compelled to hide from the car in a grocery store parking lot. She sought protection from the police and she sought protection from courthouse security. In addition, she told her fellow jurors to watch out for themselves. Her fellow jurors described her demeanor after the incident as scared, upset, concerned, nervous, and worried. These are not the emotions of someone who is fair and impartial. And these are not the actions of someone who is fair and impartial. These are the actions and emotions of someone who believes that they are in danger. And again, Juror P.A. unequivocally associated that danger with this case. But the judge failed to really take all of that into consideration. And instead, in allowing P.A. to remain on the jury, it relied solely on her statements that she believed that she could remain fair and impartial. But her recounting of the incident, along with the descriptions of her demeanor given by her fellow jurors, indicate that she was And that's precisely why the judge should have removed her and replaced her with the alternate juror, who again, had absolutely no knowledge of this incident. The judge had an obligation to protect Mr. Taylor's right to a fair trial by an impartial jury. And in failing to remove Juror P.A. from the jury and replace her with the alternate juror, the judge violated that right. And accordingly, Mr. Taylor respectfully requests that this defendant be remanded for a new trial. Very good. Thank you, counsel. You have time to reply. Mr. Lennart? May it please the court, counsel? The trial judge did everything correct in this case. The defendant was not denied a fair trial because of an impartial juror. The trial judge questioned Juror P.A. and all the other jurors and even the alternate juror. The defense counsel even questioned Juror P.A. The defense counsel asked the juror if this incident made the juror afraid of the defendant or think more likely the defendant was guilty. The jury said it was not going to let it intimidate her one way or the other. The trial judge also questioned Juror P.A. and Juror P.A. did say that she associated the car that followed her with the trial, but she did not associate that person or that car with either of them. The trial judge then asked Juror P.A. whether she believed she could be a fair and impartial juror. After this incident, she responded, absolutely. So the trial judge did not blindly rely on Juror P.A.'s statements to find that she was not impartial. He questioned all of the jurors and the alternate and Juror P.A. and came to the conclusion that the juror was fair and impartial. Moreover, the defendant's argument is based on her suspicion of partiality which is insufficient to show that he was denied a fair trial. The defendant has to show that the juror had a disqualifying state of mind. Taking all this evidence together, it cannot be said that the juror had a disqualifying state of mind. Moreover, there is not one piece of evidence to suggest that the defendant was denied a fair trial because the trial judge did not replace Juror P.A. with the alternate. Eleven other jurors found the defendant guilty of the offenses. It was not just Juror P.A. who had done it. Moreover, any evidence that the victim here was denied a fair trial is rebutted by the record, by all of the evidence, not just that Juror P.A. was prejudicial because the trial judge considered all of this evidence. When the trial judge's decision to replace a juror, the standard of review is whether that trial judge abused his discretion. In this case, the trial judge did not abuse that discretion. As I said before, the trial judge considered all of the evidence, not just blindly following P.A.'s testimony to the trial judge. There are no other pieces of evidence that the defendant was denied a fair trial. In response to counsel's argument that the judge here did everything correct, absolutely. The parties questioned this juror and there's no doubt about that. But the judge here didn't consider the totality of the circumstances. Again, in his ruling, he based his ruling entirely on what the juror had said, and that was that she could remain fair and impartial. But her statements, that she could remain fair and impartial, weren't conclusive evidence of that fact. It was the judge's obligation to objectively discern whether or not that was actually true. And here, there's more than a mere suspicion here of juror P.A.'s disqualifying state of mind. Again, her whole recounting of the incident and the fact that she believed that what could have been a coincidence was related to the trial speaks to her state of mind. It speaks to at least a level of unconscious bias here. And again, regardless of whether or not she associated being followed with a particular party, it's clear that she, again, believed that she was in danger and that danger was directly associated to her jury service. And like I said before... My question is that upon questioning by the trial judge, the juror was saying, I have no bias because of this incident. That's conscious, right? Correct. And so you're saying that the judge has an obligation to go and examine facts and circumstances other than her statements to discern what might appear to be unconscious bias. Correct. Yes, that is correct. And again... And that there's nothing here in the record to suggest that Judge, you said she, Judge Kathy Bradshaw... Oh, sorry. She. Yes, she did that. No. I mean, again, she took the juror at her word that she could remain fair and impartial. Which side do you think was impacted negatively by the juror's nervousness? I believe it was the defense. Didn't the juror say she wasn't sure which side the people were associated with that may have been following her? She said she would have no way of knowing. So the way that the question and the response was framed, so they asked her, do you know who this person is associated with? Which assumes that she would know definitively either way. And she said, no, I would have no idea which side. And so she, again, and I think her language there is particularly important. She didn't have any idea definitively which side, but that doesn't mean that she didn't implicitly associate it with a particular side, if that makes sense. I'm not sure it does make sense, which is why I asked the question. Okay. And again, I think it's important to note here, too, is that really the only link, the only discernible link between the incident and the trial was that the description of the shooter in this case, the shooter was described as being an African American wearing a hooded sweatshirt. And the juror described the person who was following in the car behind her as being an African American wearing a hooded sweatshirt. And it's a small link, but that's really the only discernible link between the trial and the incident. And again, I think that that speaks to the juror's state of mind in this case. And again, regardless of whether she knew definitively or associated it with a particular side, she associated it with her service as a juror. And the fix here, again, was easy. The court had, all the court had to do was to dismiss juror PA and appoint the alternate juror who did not, who had no idea that juror PA had believed that she had been followed and had absolutely no knowledge of the incident whatsoever. This was an easy fix to ensure that Mr. Taylor got a fair trial. And the court didn't do that here. But was it quite so easy because didn't juror PA come back into the room and talk to other jurors about it? Correct, except... So to excuse one, don't you have to excuse all? And were there enough alternates to fill those spots? Not necessarily. So, when questioned, the other jurors who had heard juror PA say that they personally didn't, they thought that she was, had read more into it basically than it was necessary. And that they believed it was, you know, just kind of one of those things, but that she seemed concerned and worried and upset and so forth. Can we, if we've been on that road of unconsciousness, could we just take their word for it? Or do we take their word for it? But again, I think that they're, the issue here is whether, how this incident affected PA and the point of saying... No, the information, the information. And she said, you better be careful. Correct. Okay, well, that, I mean, you know, I don't know the unconscious, that could have affected, you know, I'm not sure that we can take their word for it anymore than we could take, you say we can't take her word for it. I disagree, Your Honor, and that's because there is more evidence of the jurors, juror PA's bias here than there is of the other jurors. That's only if you, that's accepting what they consciously tell you. I mean, there's that unconscious you keep talking about. But it, so, there is case law that says, you know, that, and this is why judges are supposed to consider the totality of the circumstances. And I read the quote, it's because jurors themselves are incapable of knowing the effect which prejudicial matters may have upon their unconscious minds. And again, when there is evidence outside of what the jurors say that indicate that they, that there might be some bias here. I would argue that that's probably pretty bad language. We're getting into some murky area there. The facts and circumstances are probably more to go to in legal terms, the Absolutely. But I don't think it goes into this psychological stuff. Understandably, Your Honor, and I agree that it absolutely goes to the credibility of juror PA's statements in this case. Right. And there is reason to believe that, and I'm not saying that she was lying, and that's I guess where the unconscious bias comes in, is because I'm not saying that this was one maybe not fully aware of how this was affecting her, even though other people, her fellow jurors, could see things that she couldn't in terms of her demeanor. Counsel, what is the significance of her statement, I refuse to be intimidated? I think it's significant that she thinks that the purpose was to intimidate her. I think that's the significance of that. That she thought that the purpose of being followed, again, believing she was a victim, the purpose was to intimidate her. But she said clearly, but I don't know which way is a reasonable inference. She said, I don't know what side you're associating. She said, I would have no way of knowing. So she doesn't know? Not definitively, but that doesn't mean that she didn't have her suspicions as to which side. Or is it a reasonable interpretation that she's going to be a perfect juror and decide the case only upon the facts and the evidence presented and follow the judge's instructions to the deed? I disagree with that assessment, Your Honor. Respectfully. Respectfully. Very good. I have another question for you. There was a shooting victim here. Yes. His name was Nelson Williams. Do you happen to know his ethnic persuasion? He was also African American. And do you know what the juror's ethnic persuasion was? That is, I believe she was white. Judge Bradshaw would be able to evaluate all that, which we don't see, nor should we imply, based on what we read with regard to race and the relationships here. But Judge Bradshaw certainly could see who was in the courtroom, who was watching the trial, the nature of the jury, the makeup of the jury, and based on everything, she made a decision that you feel was an abuse of discretion? I believe she didn't actually consider the totality of the circumstances. What did she miss? I believe that she missed the very fact that Juror PA even associated this incident with the trial itself. Again, I think that that calls the juror's impartiality into question. This was very likely a coincidence. It was a person who happened to be traveling in the same direction as her. And again, she testified that she had turned into the parking lot and went to the left. And this person who was supposedly following her turned into the parking lot and went in the opposite direction. And so at that point, but she still considered herself in danger. So she still, even though the person who, again, happened to be traveling in the same direction and in this juror's mind following her, when they turned away from her, she still believed that she was in danger. And again, I think that that speaks to, I think that calls her impartiality into question. Okay, one more question. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue the proper standard.